UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.

        Case Number 07-20526-BC
        Honorable Thomas L. Ludington

JOHN TYLER MCKINNEY, SR.,

        Defendant.
_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO SUPPRESS STATEMENT AND DENYING DEFENDANT'S MOTION TO DISMISS PENALTY ENHANCEMENT

On October 25, 2007, Defendant John Tyler McKinney, Jr. was indicted on six narcotics counts in violation of 21 U.S.C. § 846, 21 U.S.C. § 841(a)(1), and 18 U.S.C. § 2. On December 1, 2008, Defendant filed three motions, two of which remain outstanding. First, Defendant maintains that a statement made to an agent at a Federal Bureau of Investigation ("FBI") office was coerced and should be suppressed. Dkt. # 63. Second, Defendant asserts that a prior state conviction for possession of a "non-narcotic controlled substance" does not qualify as a "felony drug offense" as defined by 21 U.S.C. § 802(44) and can not support the a penalty enhancement pursuant to 21 U.S.C. § 841(b)(1). Dkt. # 65. On March 11, 2009, the parties presented oral argument and testimony related to these motions. At the conclusion of that hearing, the Court directed the parties to submit supplemental briefing.

After considering the parties' briefs and the testimony of the FBI agent, the Court will **GRANT** in part and **DENY** in part Defendant's motion to suppress his statement. Next, the Court will **DENY** Defendant's motion to dismiss the penalty enhancement because Defendant's prior conviction for possession of dihydrocodeinone – a narcotic drug under Federal law – qualifies as

a felony drug conviction.

I

A

On March 1, 2007, law enforcement executed a search warrant on a residence in Saginaw, Michigan. Defendant was present during that search. One of the investigating officers, Special Agent Steven Flattery of the FBI, had a seven to ten minute conversation with Defendant during the search. Agent Flattery indicated that he would appreciate Defendant's cooperation at a later date. At that time, Defendant did not provide any information regarding illicit activity. Law enforcement did arrest Defendant at the conclusion of the search, but released him pending further investigation. Thereafter, Defendant contacted Agent Flattery, arranging a meeting at the FBI field office in Bay City.

On March 5, 2007, Defendant drove himself to the field office and met with Agent Flattery in a conference room. Defendant was not placed under arrest. He had not been charged with any criminal activity arising from the March 1 search. Before questioning Defendant, Agent Flattery informed Defendant of his Fifth Amendment rights, orally and in writing. Defendant signed the written form acknowledging his rights to remain silent and to have counsel present. Dkt. # 68-2.

Agent Flattery and Defendant spoke for approximately an hour. During that conversation, Defendant implicated his involvement in narcotics trafficking. Defendant also provided information regarding other individuals involved in the local drug trade. Agent Flattery denied that he sought information related to the March 1 search. He testified as follows:

> The purpose of the meeting was not to elicit any type of information regarding that incident on March 1. I told him we'll stay away from that, that's a case you have pending right now. But to talk about some of his history, people he knows, activities within the city and help get a feel for what I believe – I believe – he could help us

with.

Agent Flattery clarified the purpose of the questioning as follows:

> A:   At that point I was looking at developing our relationship, starting very slowly with him. With regards to March 1, I did not know what the charges would be or what the prosecutor's office was going to do. Was he going to get an attorney for that incident? And I believe at that point I did not want to solicit information regarding that particular event that day where I was looking for more of a background of where I could assist him if needed, and based on his cooperation and a larger investigation.
>
> The Court:   Indeed, you testified earlier, as I recall, that you talked with him about that, you said we won't talk about anything related the March 1 events.
>
> A:   That is correct, your honor.
>
> The Court:   And again the reason for that in your mind was?
>
> A:   I did not know what the status of him being arrested that evening, what the status of that case would be. Because that was an active case he had going. The other, the general information I had regarding Mr. McKinney and some of his contacts, that's what I was gaging my interview of him about.
>
> The Court:   Would you believe, based on your conversation with him, that the discussion that would occur thereafter would be unrelated to the March 1 event; is that accurate?
>
> A:   That is accurate your honor.

Agent Flattery explained, however, that he would "do what he could" to minimize Defendant's criminal exposure by speaking with the prosecuting authorities if Defendant provided "significant cooperation."

On October 24, 2007, the government indicted Defendant along with two others in an eleven-count complaint. *See generally* dkt. # 4. Defendant was charged with six violations of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Two of those violations allegedly occurred on March 1, 2007 and the remaining violations allegedly occurred on August 7, August 16, August 22, and September 5,

2007. Defendant was also charged for violating 21 U.S.C. § 846 for his alleged participation in a conspiracy beginning at an unknown time and continuing until October 24, 2007.

B

The Due Process Clause of the Fourteenth Amendment protects against "certain interrogation techniques." *Colorado v. Connelly*, 479 U.S. 157, 163 (1986) (citing *Miller v. Fenton*, 474 U.S. 104, 109 (1985)). "To prove an unconstitutional confession, coercive police activity is a necessary predicate to finding that a confession is not voluntary." *United States v. Gatewood*, 230 F.3d 186, 193 (6th Cir. 2000). The burden lies with the government to demonstrate that a statement was voluntary. *United States v. Johnson*, 351 F.3d 254, 260 (6th Cir. 2003) (citation omitted). The court "looks to the totality of the circumstances concerning whether a defendant's will was overborne in a particular case" and evaluates whether "(i) the police activity was objectively coercive; (ii) the coercion in question was sufficient to overbear the defendant's will; and (iii) the alleged police misconduct was the crucial motivating factor in the defendant's decision to offer the statement." *Id.* (quoting *United States v. Mahan*, 190 F.3d 416, 422 (6th Cir. 1999)).

Defendant contends that Agent Flattery and Defendant had "an understanding, whether explicit or implicit, that Defendant was acting as a cooperating individual in exchange for future considerations in a potential case against him." Dkt. # 75 at 1. The record does support Defendant's view, but it does not reflect that Defendant believed he was being granted the equivalent of immunity or that his statements were otherwise coerced. Defendant voluntarily arranged and attended the hour-long interview. Further, Defendant was advised of his right to remain silent and right to counsel. There is no allegation of physical coercion or abusive tactics. Rather, Agent Flattery testified that Defendant was motivated by a potential for leniency from the state or federal

prosecuting agency. Agent Flattery provided unrebutted testimony that he would "do what he could" for Defendant, but the record is devoid of any indication that the entire substance of the March 5 interview would never be used against Defendant.

Notwithstanding that conclusion, Agent Flattery expressed to Defendant that the interview would "stay away" from the events of March 1. Thus, the record does support that Agent Flattery identified the scope of the interview to Defendant such that it is reasonable to conclude Defendant believed that any statements related to March 1 would not be harmful to his future interests. Thus, Defendant's motion is granted with respect to any statements specifically related to his involvement in the events related to the March 1 search.

II

On September 21, 2006, Defendant entered a plea of nolo contendre to possession of a controlled substance before Saginaw County Circuit Court. The judgment identifies the crime as "POSS CS-NON-NARC ADD" in violation of Mich. Comp. Laws § "333.74032B-B."[1] Dkt. # 65-3. In the present matter, the government seeks a penalty enhancement contained in section 841(b)(1) because the state court conviction amounts to a prior "felony drug offense." 21 U.S.C. § 857; *see* dkt. # 27. Defendant seeks to dismiss the penalty enhancement, contending that possession of dihydrocodeinone, as a non-narcotic substance, does not qualify as a prior drug offense as defined by 21 U.S.C. § 802(44).

---

[1] Mich. Comp. Laws § 333.7403(1) provides "[a] person shall not knowingly or intentionally possess a controlled substance, a controlled substance analogue, or a prescription form unless the controlled substance, controlled substance analogue, or prescription form was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of the practitioner's professional practice, or except as otherwise authorized by this article." Section 333.7403(2)(b)(ii) provides "[a] controlled substance classified in schedule 1, 2, 3, or 4, except a controlled substance for which a penalty is prescribed in subdivision (a), (b)(I), (c), or (d), or a controlled substance analogue is guilty of a felony punishable by imprisonment for not more than 2 years . . . ." It appears that possession of dihydrocodeinone would be punishable under this subdivision as it is not identified in (a), (b)(I), (c), or (d).

As a threshold matter, the parties agree that a crime of possession may qualify as conduct related to narcotic drugs. *See United States v. Spikes*, 158 F.3d 913, 932 (6th Cir. 1998). The dispute centers around whether possession of dihydrocodeinone satisfies the statutory requirement. The government contends that felony possession of a controlled substance, non-narcotic or narcotic, exposes Defendant to the penalty enhancement. Defendant argues that the prior conviction does not relate to narcotic drugs because his state conviction for possession of dihydrocodeinone was classified as a non-narcotic substance. Consequently, the state conviction is not a "felony drug offense" under the statutory scheme.

In the alternative, the government argues that Federal and Michigan law recognizes dihydrocodeinone as a narcotic drug, regardless of the classification in the state judgment of conviction. Defendant maintains that dihydrocodeinone is a "non-narcotic" substance and the penalty enhancement is inapplicable.

21 U.S.C. § 841(b)(1)(A) provides the following penalty enhancement: "If any person [violates this section] after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment which may not be less than 20 years and not more than life imprisonment . . . ." 21 U.S.C. § 841 (b)(1)(B) and (C) contain similar penalty enhancements for a prior felony drug offense. "Felony drug offense" is defined as "an offense that is punishable by imprisonment for more than one year . . . that prohibits or restricts conduct *relating to narcotic drugs*, marihuana, anabolic steroids, or depressant or stimulant substances." 21 U.S.C. § 802(44) (emphasis added).[2]

The government argues that possession of dihydrocodeinone, regardless of its classification,

---

[2] Defendant concedes that the state conviction was punishable by more than a year of imprisonment.

relates to narcotic drugs because of the close relationship between controlled substances and narcotic drugs. In support, the government offers *Spikes*, which concludes that a conviction for felony possession of narcotics constitutes relevant past conduct that relates to narcotic drugs.

Defendant, however, does not dispute that a possession crime satisfies the statutory requirement. Rather, Defendant asserts that possession of a *non-narcotic* controlled substance does not satisfy the requirement of relating to narcotic drugs. *Spikes*, nor any of the authority advanced by the government, addresses the scope of "narcotic drugs" as defined in the statute. *See United States v. Hansley*, 54 F.3d 709, 718 (11th Cir. 1995) (addressing whether an offense of possession of unidentified drug satisfies enhancement requirement); *United States v. Sandle*, 123 F.3d 809, 812 (5th Cir. 1997) (considering possession of cocaine charge); *United States v. Brown*, 500 F.3d 48, 60 (1st Cir. 2007) (considering whether attempted possession of an unidentified controlled substance related to narcotic drugs); *United States v. Rosales*, 516 F.3d 749, 758 (9th Cir. 2008). The courts in these cases did not address whether conduct associated with "non-narcotic" drugs related to narcotic drugs. While *Spikes* acknowledges that "*any* criminal conduct" relating to narcotics drugs triggers the enhancement, the government must still connect activity associated with non-narcotic drugs with narcotic drugs. 158 F.3d at 932 (emphasis in original). In the Court's view, the statute provides that the prior conviction "relates to narcotic drugs" when it directly involved a narcotic drug. 21 U.S.C. § 802(44) specifically references narcotic drugs, which is also defined by statute. Thus, the government's argument is unpersuasive and the Court will proceed to the government's alternative view.

The government argues that federal law indicates dihydrocodeinone constitutes a "narcotic drug" as contemplated in 21 U.S.C. § 802(44) . The term "narcotic drugs" is defined as substances

derived from opium, coca leaves, poppy straw, or ecgonine. 21 U.S.C. § 802(17). Notwithstanding that definition, the government emphasizes that a federal court "looks to federal law for the definition of a felony drug offense." *United States v. Bradley*, 178 F.3d 1296 (Table), 1999 WL 187450, \*4 (6th Cir. March 8, 1999) (citing *Spikes*, 158 F.3d at 931)). The Code of Federal Regulations classifies dihydrocodeinone as a schedule III controlled substance and provides as follows:

> Narcotic drugs. Unless specifically excepted or unless listed in another schedule:
>
> (1) Any material, compound, mixture, or preparation containing any of the following narcotic drugs, or their salts calculated as the free anhydrous base or alkaloid, in limited quantities as set forth below:
>
>> (iii) Not more than 300 milligrams of dihydrocodeinone (hydrocodone) per 100 milliliters or not more than 15 milligrams per dosage unit, with a fourfold or greater quantity of an isoquinoline alkaloid of opium
>>
>> (iv) Not more than 300 milligrams of dihydrocodeinone (hydrocodone) per 100 milliliters or not more than 15 milligrams per dosage unit, with one or more active nonnarcotic ingredients in recognized therapeutic amounts

21 U.S.C. § 1308.13(e)(1)(iii)-(iv).

Here, Defendant acknowledges that his past conviction was for possession of dihydrocodeinone. The definition contained in 21 U.S.C. § 1308.13(e)(1)(iii)-(iv) indicates that dihydrocodeinone is classified as a narcotic substance under federal law.[3] While the state conviction was for a charge involving a non-narcotic substance, his acknowledgment that his past conviction involved dihydrocodeinone – a narcotic drug under federal law – is controlling authority. The penalty enhancement is properly invoked here.

---

[3] Indeed, Michigan law also classifies dihydrocodeinone as a narcotic drug. *See* Mich. Comp. Laws § 333.7216(1)(g)(iii)-(v).

III

Accordingly. it is **ORDERED** that Defendant's motion to suppress statement [Dkt. # 63] is **GRANTED** in part and **DENIED** in part.

It is further **ORDERED** that Defendant's motion to dismiss penalty enhancement [Dkt. # 65] is **DENIED**.

                                               s/Thomas L. Ludington
                                               THOMAS L. LUDINGTON
                                               United States District Judge

Dated:  April 29, 2009

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on April 29, 2009.

                               s/Tracy A. Jacobs
                               TRACY A. JACOBS